# In the United States Court of Federal Claims

No. 21-2327

(Filed under seal: August 12, 2022)
(Reissued: August 19, 2022)

|  |  |  |
|---|---|---|
| | ) | |
| **SIKORSKY AIRCRAFT** | ) | Alleged breach of contract; cost |
| **CORPORATION,** | ) | accounting standard 420; research and |
| | ) | development costs; effect of a Forward |
| Plaintiff, | ) | Pricing Rate Agreement. |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES**, | ) | |
| | ) | |
| Defendant. | ) | |

Thomas A. Lemmer, Dentons US LLP, Denver, CO for plaintiff Sikorsky Aircraft Corporation.  With him on the briefs were Joseph G. Martinez and Phillip R. Seckman, Dentons US LLP, Denver, CO.

Antonia R. Soares, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the United States.  With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Eric P. Bruskin, Assistant Director, and Kelly Geddes, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel were Amelia Lister-Sobotkin, Trial Attorney, Contract Disputes Resolution Center, Defense Contract Management Agency, and Patrick L. Vergona, Assistant General Counsel, Defense Contract Audit Agency, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Senior Judge.

Plaintiff Sikorsky Aircraft Corporation ("Sikorsky") has sued defendant United States ("the government") for breach of contract, alleging that the Defense Contract Management

---

[1] Because of the proprietary nature of the information submitted in the appendices attached to the motion at issue, this opinion was initially filed under seal.  The parties were requested to review the decision and provide proposed redactions of any confidential or proprietary information; plaintiff proposed two redactions, while defendant proposed none.  The court grants plaintiff's request in part.  The resulting redactions are shown by brackets enclosing ellipses, *e.g.*, "[***]."

Agency ("DCMA") failed to reimburse Sikorsky over $[***] million in costs associated with independent research and development ("IR&D") and bid and proposal ("B&P") costs incurred in contracts with the government. *See* Compl. at 1, ECF No. 1.  The government counters that Sikorsky failed to comply with Cost Accounting Standard ("CAS") 420, entitling the government to be reimbursed for these costs.  Accordingly, the government seeks to dismiss Count II of the complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction as well as Counts III, V, and VI of the complaint pursuant to Rule 12(b)(6) for failure to state a claim.  *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 15.  Specifically, the government alleges that this court lacks jurisdiction over Sikorsky's B&P cost claims because there was no officer's final decision on those costs and that the other contested counts in Sikorsky's complaint fail to state a claim.  *Id.* at 15-16.  Sikorsky responds that the court has jurisdiction over all its claims and that it has pleaded plausible, legally valid claims.  Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 1, ECF No. 18.  After initial briefing, *see* Def.'s Reply, ECF No. 27, the court held a hearing on July 7, 2022.  It subsequently ordered supplemental briefing on the effect of a Forward Pricing Rate Agreement entered by the parties in the midst of their contractual dealings and that briefing has been completed.  *See* Def.'s Suppl. Br., ECF No. 33; Pl.'s Suppl. Br., ECF No. 34.  The motion is ready for disposition.

## BACKGROUND[2]

### A.  Legal Framework

The contracts at issue in this action are subject to the CAS, which are nineteen cost-accounting criteria promulgated by the Cost Accounting Standards Board ("CASB").  Def.'s Mot. at 3-4.[3]  The CAS are "designed to achieve uniformity and constancy in the cost-accounting principles followed by defense contractors and subcontractors under [f]ederal contracts." *Sikorsky Aircraft Corp. v. United States*, 105 Fed. Cl. 657, 661 n.4 (2012) (quoting *Allegheny Teledyne Inc. v. United States*, 316 F.3d 1366, 1370 (Fed. Cir. 2003)).  At their core, the standards regulate which contractor costs may be allocated to a government contract as well as how those costs may be allocated.  *Id.*  "The aim of the standards is to allow a contractor to charge to government contracts only those costs of doing business that should be fairly attributed to the performance of those contracts."  *Id.* (citing Darrell J. Oyer, *Accounting for Government Contracts—Cost Accounting Standards*, §§ 1.01 to 1.05 (2010)).

Federal Acquisition Regulation ("FAR") Part 30 "establish[ed] procedures to be followed in the administration of contracts subject to the CAS."  *Sikorsky Aircraft Corp.*, 105 Fed. Cl. at 661 (footnote omitted).  As an initial step, the contractor is required to submit a "Disclosure Statement," which is "a written description of a contractor's cost accounting practices and

---

[2] The recitations that follow do not constitute findings of fact but rather are recitals attendant to the pending motion and reflect matters drawn from the complaint, the parties' briefs, and records, and documents appended to the complaint and briefs.

[3] The nineteen standards are codified at 48 C.F.R. §§ 9904.401 to 9904.420.

procedures."  FAR § 9903.202-1(a) (incorporated by FAR § 30.202-1); *see also* FAR § 52.230-2(a)(1).  That Disclosure Statement must then be submitted to the cognizant federal auditor and to the cognizant federal agency official ("CFAO") responsible for the contractor's CAS-covered contracts.  *See* FAR § 9903.202-5(b) (incorporated by FAR § 30.202-5); *see also* FAR § 30.001.  Disclosure Statements are reviewed by the auditor for "adequacy and compliance," but the CFAO makes the ultimate determination on those topics.  FAR §§ 30.202-6(c); 30.202-6(d).[4]  The auditor advises the CFAO on the results of their review after which the CFAO makes a determination of compliance or noncompliance.  FAR § 30.202-7(b).  FAR § 30.202-6(b) explicitly states that a contracting officer "shall not award a CAS-covered contract until . . . [there is] a written determination that a required Disclosure Statement is adequate."  FAR § 30.202-6(b).  No such restriction is imposed for the compliance determination.

In the event of alleged noncompliance, the CFAO must within fifteen days of the auditor's report either notify the auditor of their disagreement or notify the contractor of potential noncompliance.  FAR § 30.605(b)(1).  A contractor has sixty days to respond if noncompliance is potentially at issue.  FAR § 30.605(b)(2)(ii).  After the passage of sixty days, the CFAO then must "[m]ake a determination of compliance or noncompliance" and notify the contractor.  FAR § 30.605(b)(3)(ii).  In the event the CFAO makes a determination of noncompliance, the contractor has sixty days to submit a "description of any cost accounting practice change needed to correct [the] noncompliance."  FAR § 30.605(c)(1); *see also* FAR § 52.230-6(b)(4)(ii).  Assuming the change in practice is deemed adequate and compliant, the CFAO must ask the contractor for "a general dollar magnitude" or "[d]etailed cost-impact" proposal in order to recoup any money potentially owed to the government as a result of the noncompliant accounting practice.  FAR § 30.605(c)(2)(i)(B), (d), (f); *see also* FAR § 52.230-6(c).

If the contractor fails to submit such a proposal, "the CFAO may estimate the cost impact himself [or herself] and either withhold payments under the disputed contracts or '[i]ssue a final decision . . . and unilaterally adjust the contract(s).'"  *Sikorsky Aircraft Corp.*, 105 Fed. Cl. at 662 (second alteration in original) (quoting FAR § 30.604(i)(2)(ii); citing FAR § 52.230-6(j)).  If the contractor does submit a cost-impact proposal, the CFAO must determine if the impact is immaterial—in which case no money is owed subject to the government reservation to make future adjustments—or that it is material and the CFAO must either reach an agreement with the contractor or, in the event of disagreement, the CFAO must "issue a final decision . . . and unilaterally adjust the contract(s)."  FAR 30.606(c)(6)(ii); *see also* FAR §§ 30.605(e) (referencing FAR § 30.605(b)(4)), 30.606(a)(1), (b)(1).[5]

---

[4] "A Disclosure Statement is first reviewed for adequacy and then for compliance." *Sikorsky Aircraft Corp.*, 105 Fed. Cl. at 661.

[5] "FAR § 52.230 [also] plays a role in CAS administration.  FAR § 52.230 consists of contract clauses incorporated into CAS-covered contracts.  *See* FAR § 30.201-4.  These clauses essentially mirror some of the procedures found at FAR Part 30 by obligating the contractor to comply with the government's requirements and requests made pursuant to its authority under FAR Part 30." *Sikorsky Aircraft Corp.*, 105 Fed. Cl. at 662.

For IR&D and B&P costs, contractors must comply with CAS 420. CAS 420 defines IR&D costs as "the cost of effort which is neither sponsored by a grant, nor required in the performance of a contract, and which falls within any of the following three areas: (i) [b]asic and applied research, (ii) [d]evelopment, and (iii) [s]ystems and other concept formulation studies." FAR § 9904.420-30(a)(6). Also, B&P costs are defined as "the cost incurred in preparing, submitting, or supporting any bid or proposal which effort is neither sponsored by a grant, nor required in the performance of a contract." *Id.* at § 9904.420-30(a)(2).

Consistent with CAS 420, IR&D costs must be allocated to the correct segment of a contractor's business.[6] IR&D costs are to be allocated to segments based on the "beneficial or causal relationship" between the cost and the segment. FAR § 9904.420-40(d)-(e). When costs are accumulated at a home office, CAS sets out a hierarchy for allocating those costs to segments. FAR § 9904.420-50(e).[7] For all other costs, the contractor will allocate the costs among all segments using the contractor's residual expense base. FAR § 9904.420-50(e)(2).

### B.   *Sikorsky's Corporate Structure and Segments*

Sikorsky's primary business is the design, manufacture, sale, maintenance, and overhaul and repair of helicopters. Compl. ¶¶ 9, 17. Like most modern companies of its size, Sikorsky is made up of smaller entities, some of which are relevant here. Sikorsky Aircraft Operations ("SAO") was a "financial reporting entity" which served as a segment for cost allocation purposes. Def.'s Mot. App'x at 7, ECF No. 16. It was comprised of Sikorsky Aircraft Corporation, Sikorsky Export Corporation, and Sikorsky Products, Inc. *Id.*; *see also* Compl. ¶ 19. In addition to serving as a segment, SAO also acted as an intermediate home office. Def.'s Mot. App'x at 5, 7. SAO itself did not have any contracts with the government but Sikorsky did, causing SAO to submit disclosure statements. *See* Def.'s Mot. App'x at 7; Compl. ¶ 21.

---

[6] Segment is defined as:

[O]ne of two or more divisions, product departments, plants, or other subdivisions of an organization reporting directly to a home office, usually identified with responsibility for profit and/or producing a product or service. The term includes [g]overnment-owned contractor-operated (GOCO) facilities, and joint ventures and subsidiaries (domestic and foreign) in which the organization has a majority ownership. The term also includes those joint ventures and subsidiaries (domestic and foreign) in which the organization has less than a majority of ownership, but over which it exercises control.

FAR § 9904.403-30(a)(4).

[7] A home office is defined as "[a]n office responsible for directing or managing two or more, but not necessarily all, segments of an organization." FAR § 9904.403-30(a)(2).

### C. Sikorsky's Cost Allocation Practices

Over the course of ten years starting in 2007, Sikorsky entered numerous CAS-governed contracts with the government.  Pl.'s Opp'n at 1.  During that time, SAO acted as a "consolidation point" for the costs of its comprising entities.  Def.'s Mot. App'x at 7.  Despite not holding government contracts, Sikorsky alleges that SAO performed IR&D and B&P projects, accumulating costs for those projects for annual allocation to segments.  Compl. ¶ 28. From January 2007 until approximately December 2011, IR&D and B&P costs were accumulated at SAO, and those costs were allocated solely to SAO.  Compl. ¶ 110; Def.'s Mot. App'x at 46.  From 2012 through 2017, costs were allocated to either SAO or the Sikorsky Global Helicopter (SGH) segment or shared on the basis of sales.  *See* Compl. ¶¶ 114, 116.

In April 2012, the parties entered into a Forward Pricing Rate Agreement ("FPRA").[8] Compl. ¶ 120; Def.'s Mot. App'x at 8-20.  The FPRA provided that it was "consistent with the disclosed cost accounting practices identified by Sikorsky Aircraft Corporation in its current Cost Accounting Standards Board Disclosure Statement . . . dated February 22nd, 2012."  Def.'s Mot. App'x at 10.  The FPRA also stated that "[t]he parties retain the right to unilaterally and immediately cancel this agreement upon written notification to the other party" with five days written notice.  Def.'s Mot. App'x at 9.  It further provided the agreement would "in no way prejudice the rights of either party with respect to compliance or noncompliance with the FAR, . . . Cost Accounting Standards, . . . and other applicable federal statutes."  Def.'s Mot. App'x at 10.  From April 2012 to November 2014, the rates established in the FPRA were used as the basis for pricing contract actions between the parties.  Compl. ¶ 123.

Also in 2012, the Defense Contract Audit Agency issued a Statement of Conditions and Recommendations, which stated that it found areas of noncompliance with CAS 420 in Sikorsky's cost accounting practices.  Compl. ¶ 124.  It was alleged that Sikorsky had failed to allocate costs to segments on "the basis of the beneficial or causal relationship between the IR&D and B&P costs and the segments reporting to the home office."  Def.'s Mot. App'x at 22; *see also* Compl. ¶ 125.  Sikorsky was given sixty days to respond, *see* Def.'s Mot. App'x at 21, and although Sikorsky made requests for additional information, it did not submit a formal response, Def.'s Mot. at 11.

On August 29, 2014, the Defense Contract Audit Agency issued Audit Report No. 2641-2012B19200002 ("the audit").  Compl. ¶ 134; Def.'s Mot. App'x at 41-69.  The audit concluded that the IR&D and B&P costs of the SAO home office "were not allocated to segments . . . on the basis of the beneficial or causal relationship between the IR&D and B&P costs and the segments reporting to the home office as required by CAS 420.40(d) and CAS 420.50(e)." Def.'s Mot. App'x at 46.  The audit concluded that costs were only allocated to SAO or SGH.

---

[8] A FPRA is a "written agreement negotiated between a contractor and the [g]overnment to make certain rates available during a specified period for use in pricing contracts or modifications."  FAR § 2.101.

Def.'s Mot. App'x at 46-47.  On September 12, 2014, a notice of potential noncompliance was issued.  Compl. ¶ 139.[9]

On December 29, 2020, the Defense Contract Management Agency Divisional Administrative Contracting Officer issued a Final Decision and Demand for Payment of Debt, seeking over $[***] million dollars.  Compl. ¶ 2; Pl.'s Opp'n at 2.[10]  The decision outlined the government's view that Sikorsky was noncompliant with CAS 420 from January 2007 to December 2011 "because it indiscriminately allocated all SAO [home office] IR&D costs to the SAO Segment despite there being a clear causal or beneficial relationship between those projects and other segments."  Def.'s Mot. App'x at 82.  Sikorsky was also found to be noncompliant for allegedly failing to "allocate any remaining IR&D/B&P project costs that benefitted the company as a whole using its CAS 403 residual base."  Def.'s Mot. App'x at 82.  Sikorsky was found noncompliant from 2012 to 2017 because "it allocated all IR&D of a general nature to just the SAO Segment."  Def.'s Mot. App'x at 83.  On August 27, 2021, Sikorsky submitted what it purports—and the government challenges—to be a certified claim "to recover amounts that have been paid to the government as a result of a factually and legally incorrect contracting officer's final decision."  Def.'s Mot. App'x at 98; *see also* Compl. ¶ 3.  The government responded via letter, stating that the December 2020 decision "remain[ed] final and conclusive" and that the raised matters were addressed by that decision.  Def.'s Mot. App'x at 126.  It further stated that a response would not be provided to the letter.  Def.'s Mot. App'x at 126.

Sikorsky filed its complaint initiating this action on December 23, 2021, seeking, among other things, a declaratory judgment that its cost accounting practices were consistent with the CAS and accepted by the government, and alleging breach of contract.  *See* Compl.  The government responded by filing this partial motion to dismiss, claiming the court does not have subject matter jurisdiction to determine whether Sikorsky's B&P costs complied with CAS 420 because there is not a cognizant officer's final decision on that issue.  Def.'s Mot. at 16.  It further alleges that Sikorsky has failed to state a claim by seeking declaratory judgment determining that the contractual agreements between the parties preclude the government's revocation of accepted cost accounting practices.  *Id.*  It also opposes Sikorsky's contention that the government has waived its right to assert a claim for alleged noncompliance from 2012 to 2017 as well as from 2007 to 2009.  *Id.* at 16-17.

## STANDARDS FOR DECISION

### A.  Rule 12(b)(1) — Lack of Subject-Matter Jurisdiction

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an

[9] The parties entered into a tolling agreement in August 2020 to extend the statute of limitations.  Compl. ¶ 263.

[10] The government is currently in the process of recouping the alleged amounts from Sikorsky, which is making monthly payments.  Hr'g Tr. 5:4-12 (July 7, 2022).

Future citations to the hearing held on July 7, 2022 will omit the date.

executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act does not, however, provide substantive rights.  *See United States v. Testan*, 424 U.S. 392, 398 (1976).  To establish this court's jurisdiction under the Tucker Act, Sikorsky must "identify a substantive right for money damages against the United States separate from the Tucker Act."  *Todd v. United States,* 386 F.3d 1091, 1094 (Fed. Cir. 2004).  An express or implied contract creates such a right, 28 U.S.C. § 1491(a)(1), and the CDA confers jurisdiction on this court to hear disputes involving government contracts, 41 U.S.C § 7104(b).  "Courts created by statute can have no jurisdiction but such as the statute confers." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (quoting *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850)).  A claim in this court is "barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.

Claims that fall under the CDA, however, must proceed through a mandatory administrative process.  *See* 41 U.S.C. § 7103(a); *see also Ace Constructors, Inc. v. United States*, 70 Fed. Cl. 253, 265 (2006), *aff'd*, 499 F.3d 1357 (Fed. Cir. 2007).  A contractor must first submit a written claim within six years of accrual to the contracting officer, who has 60 days in which to respond or, if no response is received, the claim is deemed denied by operation of law.  41 U.S.C. § 7103(f)(5).  Upon a decision or a denial by operation of law, the contractor has one year in which to bring an action in this court.  41 U.S.C. § 7104(b)(3).

Sikorsky, as plaintiff, must establish jurisdiction by a preponderance of the evidence.  *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  When ruling on the government's motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  Yet, "[i]f a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law."  *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) and *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## B.  Rule 12(b)(6) – Failure to State a Claim

A complaint will survive a motion to dismiss under RCFC 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555-56 (citations omitted).

When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff."

7

*Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)) (additional citation omitted).  Conclusory statements of law and fact, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim.  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557); *accord Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

**ANALYSIS**

*A.   Count II – Jurisdiction*

The government argues that the court should dismiss Count II of plaintiff's complaint, which seeks to recover associated B&P costs allegedly recouped by the government for Sikorsky's purported failure to comply with CAS 420.  *See* Def.'s Mot. at 21.  The government argues that this court does not have jurisdiction over the claims asserted in Count II because it claims there is not an officer's final decision relating to B&P costs.  *Id.* at 21-22; *see also* Hr'g Tr. 4:10-14.  Sikorsky responds that the contracting officer's final decisions *does* rule on B&P costs and that it does so explicitly.  Pl.'s Opp'n at 7.  The contracting officer's final decision refers to B&P costs 23 times and explicitly states: "[i]t is my final decision that Sikorsky failed to allocate the costs of claimed IR&D/*B&P* projects to its segments on the basis of the beneficial or causal relationship between the projects and each segment."  Def.'s Mot. App'x at 81 (emphasis added).  The government argues that the references to B&P costs are merely general descriptions that mirror the regulatory language.  Def.'s Reply at 2.  It contends that the decision relates only to IR&D costs and that the controverted $200 million is entirely made up of IR&D costs.  *Id.* at 2-3; Hr'g Tr. 4:22 to 5:6.  Lastly, the government argues that the discussion of B&P costs "can be read as a typographical error."  Def.'s Reply. at 4.

"It is a bedrock principle of government contract law that [CDA] contract claims, whether asserted by the contractor or the [g]overnment, must be the subject of a contracting officer's final decision."  *Raytheon Co. v. United State*s, 747 F.3d 1341, 1354 (Fed. Cir. 2014) (citing 41 U.S.C. § 7103(a)(3)).  Generally, the facts alleged in the complaint are presumed to be true and construed favorably to the plaintiff for the purposes of a motion to dismiss.  *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  When a motion to dismiss alleges that the court lacks jurisdiction, the court may look "beyond the pleadings and 'inquire into jurisdictional facts' in order to determine whether jurisdiction exists."  *Lechliter v. United States*, 70 Fed. Cl. 536, 543 (2006) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).  Here, when the court looks beyond the pleadings, the four corners of the contracting officer's final decision purport to cover B&P costs.  *See* Def.'s Mot. App'x at 80-81.  The decision refers to such costs, and the only evidence to the contrary currently before the court are the representations of government counsel.  Hr'g Tr. 4:22 to 5:6.  While Sikorsky stated in the purported "certified claim" letter that "the COFD does not identify any particular B&P costs," Def.'s Mot. App'x at 102, this statement does not negate the effect of the language in the decision.  The court will not deprive Sikorsky of its day in court on issues that the government raised by inclusion of B&P cost references in its final decision.  The contracting officer's final decision claims B&P costs are owed, and the court therefore has jurisdiction over Sikorsky's

B&P cost claims.  To the extent the government is not seeking to recoup B&P costs from Sikorsky, the parties may stipulate as much and withdraw Count II of the complaint.  But based on the face of the final decision, the court has jurisdiction over Count II, and Sikorsky will be allowed to pursue the claim.  As to Count II of the complaint, defendant's motion to dismiss is DENIED.

### B.   Counts III, V, and VI – Failure to State a Claim

The government next contends that Counts III, V, and VI of Sikorsky's complaint fail to state a claim upon which relief can be granted "because they turn on the unfounded legal conclusion that the parties were somehow contractually bound to follow Sikorsky's disclosed cost accounting practices."  Hr'g Tr. 11:15-21.  "In general, a contractor must adjust the contract price to correct a CAS violation if (A) the [c]ontractor fail[ed] to comply with an applicable Cost Accounting Standard, and (B) such failure result[ed] in any increased costs paid by the United States."  *Gates v. Raytheon Co.*, 584 F.3d 1062, 1067 (Fed. Cir. 2009) (citing 48 C.F.R. § 52.230-2(a)(5)).  While this general rule is evident, its application to these claims is not.

Sikorsky argues that it has alleged a plausible claim by stating that the contracting officer found the disclosed practices to be compliant and that those practices were therefore incorporated into the resulting contracts, binding Sikorsky and the government to follow those practices.  Pl.'s Opp'n 13-16.  Yet, included in the very same contracts per the regulatory scheme was that Sikorsky would be required to "[a]gree to an adjustment of the contract price or cost allowance" if it failed to comply with the CAS.  FAR § 52.230-2(a)(5).  Sikorsky relies on the fact that the government continued to enter into contracts based on Sikorsky's alleged noncompliant practices without notifying Sikorsky of any concerns, which it argues should in turn represent a determination of compliance.  Pl.'s Opp'n at 16.  The government counters that the clause incorporated by FAR § 52.230-2(a)(5) clinches its ability to adjust the contract along with the fact that the 2012 FPRA stated that it would not "prejudice the rights of either party with respect to compliance or noncompliance" with the various statutory and regulatory schemes at play.  Def.'s Mot. App'x at 10.  Yet, the record currently before the court—in light of the court's obligation to view the facts in the light most favorable to the non-movant—does not provide a basis to dismiss the controverted claims.

The court accepts that the government is granted power to require contractors to comply with the CAS and the accounting practices they have disclosed; *Raytheon* makes that much certain, but what *Raytheon* does not address is the government's ability to issue compliance determinations years after entering into contracts or even after a notice of potential noncompliance.  "The duty of good faith and fair dealing is inherent in every contract." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010) (citing *Restatement (Second) of Contracts* § 205).  The connection between the government's duty to act in good faith by not allowing Sikorsky to incur costs it would later be expected to bear alone and Sikorsky's regulatory and contractual obligation to accept changes is not evident at this stage. This case does not present just a question of regulatory application but also the interaction of

regulations with existing contractual obligations.[11]  Those obligations at this point in the litigation remain governed by the court's own obligation to view the facts in the light most favorable to Sikorsky.

The court agrees with the government—as does Sikorsky—that disclosure of a contractor's accounting practices does not require the government to accept them, *see* FAR § 9903.303(a); Def.'s Mot. at 22-23; Pl.'s Opp'n at 11, but the government skims over the fact that it accepted Sikorsky's accounting practices for *five years* before it issued a draft statement of conditions and recommendations, Def.'s Mot. at 11, and another two years after that before issuing an audit report, *id.* at 11-12.  The court acknowledges that the regulations do not set a time limit for the government to make a compliance finding.  The regulations do, however, provide that a "contracting officer shall not award a CAS-covered contract until the [CFAO] has made a written determination that a required Disclosure Statement is adequate."  FAR § 30.202-6(b).  Additionally, "[a]fter the notification of adequacy, the auditor shall conduct a detailed compliance review to ascertain whether or not the disclosed practices comply with CAS."  FAR § 30.202-7(b)(1)(i) (internal formatting omitted).  The connection between the adequacy finding and the compliance finding is inherent, and the government's position that it is allowed to wait years after entering a contract before making a compliance determination, allowing a contractor to accrue years of associated costs without any notice from the government that it views such practices as noncompliant, is uncertain.

This uncertainty is amplified by the fact that the Defense Contract Audit Agency Contract Audit Manual ("DCAAM") considers "the audit responsibility [to be] a continuous requirement," DCAAM § 8-302.1(b), yet in the span of years at issue in this case only one audit was conducted, Compl. ¶ 134.  While the DCAAM also acknowledges that "instances of noncompliance may be detected and reported at various stages of the procurement," DCAAM § 8-302.1(b), in conjunction with the prior clause, the potential of that occurrence is only because of the government's continuing obligation to make audits.  Further, the DCAAM contemplates that "[d]isclosed practices not compliant with CAS" will "[t]ypically [be] [d]etected [d]uring [a]udits of Disclosure [S]tatement[s], forward pricing, [or] incurred costs."  DCAAM § 8-302.2(b) (internal formatting omitted).  This again suggests that the regulations intend for compliance determinations to be made early during the course of the procurement.  These instructions in the DCAAM are further bolstered by the FPRA entered into by the parties,

---

[11] The court notes a caveat in relation to its concern with the government's delay by observing that the duty of good faith does not extend to the formation of a contract or to negotiations of a contract.  *See 7800 Ricchi, LLC v. United States*, 152 Fed. Cl. 331, 339 (2021) (quoting *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012), and *Dobyns v. United States*, 915 F.3d 733, 740-41 (Fed. Cir. 2019), *cert. denied*, __ U.S. __, 140 S. Ct. 1106 (2020)).  Yet, once the government entered into a contract it became obligated "not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (citations omitted).  Whether the government's action in this case by entering into a FPRA and entering into contracts based on the same practices it now claims are noncompliant constitutes a waiver or otherwise obligated the government in some fashion remains to be seen.

which the DCAAM states should be "assess[ed] . . . for compliance with CAS" because the CAS "play a significant role in the development of rates and factors."  DCAAM § 9-1206(e)(2). Again, this instruction is enough to allow Sikorsky to state a plausible claim that by entering into contractual obligations, the government's regulatory rights were affected.[12]

The government further relies on the contractual clause that Sikorsky would agree to contract cost adjustments for CAS noncompliance but included in that clause is the caveat that Sikorsky is required to accept such changes "as appropriate."  FAR § 52.230-2(a)(5).  Inherent in such a limitation is the possibility that not all adjustments must be accepted.  The record and the regulatory scheme leave open the question of what rights the government has—and whether it has waived any such rights—by entering into contracts based on disclosed practices that it assertedly did not evaluate for compliance until years later (or, as Sikorsky contends, the potential that the government found the practices compliant by entering into the contracts or the FPRA in the first place). The regulations leave open the question as to the power of the government to reconsider a prior compliance finding.  The court does not reach that question, and many others, at this point.  Without the actual contracts in the record and given the facts currently alleged by plaintiff considered in their best light, the court will not dismiss Sikorsky's claims at this point but reserves judgment on the issues until further facts are presented to it.  The court refrains from holding that the government's position is barred at this time, but it also will not find that Sikorsky has failed to state a plausible claim when on their face the regulations are ambiguous in the specific set of circumstances before the court.

### CONCLUSION

For the reasons stated, the government's partial motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) is DENIED.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[12] The government points to the clause in the FPRA that states it will not prejudice the rights of either party under the various applicable regulatory and statutory schemes.  Def.'s Mot. at 11.  The court does not make a decision on the import and effect of the FPRA at this time but does note that such clauses have been interpreted to indicate that the government "was not waiving whatever adjustment rights it may have had." *Donely v. Lockeed Martin Corp.*, 608 F.3d 1348, 1355 (Fed. Cir. 2010).  Yet, such a clause does nothing if the government does not have an adjustment right for whatever reason.  *Id.*